IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

FILED
FEB - 8 2016
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VIRGINIA

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | Case No. 1:16-mj-63 |
| NISREEN ASSAD IBRAHIM BAHAR ) | |
| ) | |
| a/k/a "Umm Sayyaf," ) | |
| ) | |
| Defendant. ) | |
| ) | |

### AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT AND ARREST WARRANT

I, William H. Heaney, hereby affirm and depose as follows:

1. I seek a criminal complaint charging NISREEN ASSAD IBRAHIM BAHAR, a/k/a "Umm Sayyaf," with conspiring to provide material support to a designated foreign terrorist organization resulting in death, in violation of Title 18, United States Code, Section 2339B. From in or about August 3, 2013, and continuing thereafter up to and including May 16, 2015, in an offense begun and committed outside of the jurisdiction of any particular State or district of the United States, the defendant NISREEN ASSAD IBRAHIM BAHAR, a/k/a "Umm Sayyaf," who I expect to be first brought to and found in the Eastern District of Virginia, and others known and unknown to your affiant, did knowingly and intentionally combine, conspire, confederate, and agree to knowingly and unlawfully provide material support and resources, as that term is defined in Title 18, United States Code, Section 2339A(b), namely, property, personnel (including oneself), services, lodging and safehouses, to a foreign terrorist organization, namely Islamic State of Iraq and the Levant, knowing that the organization was a

designated terrorist organization, and knowing that the organization had engaged in and was engaging in terrorist activity as that term is defined in Title 8, United States Code, Section 1182(a)(3)(B), and knowing that the organization had engaged in and was engaging in terrorism as that term is defined in Title 22, United States Code, Section 2656f(d)(2). The death of Kayla Jean Mueller, a citizen of the United States, resulted from the commission of this offense.

2. I am a Special Agent with the Federal Bureau of Investigation (FBI). I began my service with the FBI in March 2005. I successfully completed the FBI's law enforcement training program and I continue to regularly participate in FBI training programs. My primary focus as a Special Agent has been investigations related to terrorism since 2006. I have interviewed dozens of witnesses in terrorism related matters. I stay apprised of developments in terrorism related matters with information provided by partner law enforcement agencies and the intelligence community.

3. The information contained in this affidavit is sufficient to support probable cause and does not set forth all of the information I have gathered during the course of my investigation. The information contained in this affidavit has either been personally investigated by me, or communicated to me by someone with investigative responsibility for this matter, or otherwise obtained by credible and reliable sources.

4. On October 15, 2004, the United States Secretary of State designated al-Qa'ida in Iraq (AQI), then known as Jam'at al Tawhid wa'al-Jihad, as a Foreign Terrorist Organization ("FTO") under Section 219 of the Immigration and Nationality Act and as a Specially Designated Global Terrorist under section 1(b) of Executive Order 13224. On May 15, 2014, the Secretary of State amended the designation of al-Qa'ida in Iraq ("AQI") as an FTO under Section 219 of the Immigration and Nationality Act and as a Specially Designated Global

Terrorist entity under section 1(b) of Executive Order 13224 to add the alias Islamic State of Iraq and the Levant ("ISIL") as its primary name. The Secretary also added the following aliases to the ISIL listing: the Islamic State of Iraq and al-Sham ("ISIS"), the Islamic State of Iraq and Syria ("ISIS"), ad-Dawla al-Islamiyaa fi al-'Iraq wa-sh-Sham, Daesh, Dawla al Islamiya, and Al-Furqan Establishment for Media Production. Although the group has never called itself "Al-Qaeda in Iraq (AQI)," this name has frequently been used to describe it throughout its history. To date, ISIL remains a designated FTO. In an audio recording released on or around June 29, 2014, ISIL announced a formal change of its name to the Islamic State. ISIL is engaged in a concerted campaign to acquire by force substantial land in Syria and Iraq in order to create an Islamic caliphate. ISIL has engaged in terrorist activity against United States citizens and against the national security interests of the United States. This activity includes the capture and murder of non-military United States citizens. As used in this affidavit, the term "ISIL" means the designated foreign terrorist organization ISIL, or any of the predecessor or alternate names for that organization.

5. Abu Bakr al-Baghdadi is the leader of ISIL, a terrorist organization that has committed systematic abuses of human rights, including indiscriminate killing and deliberate targeting of innocent civilians, mass executions and extrajudicial killings, persecution of individuals and religious and ethnic communities on the basis of their identity and religious affiliation, kidnapping of innocent civilians, killing and maiming of children, and rape and other forms of sexual abuse and violence.

6. Baghdadi led ISIL during all the material events set forth in this affidavit and continues to lead the terrorist organization today. On or about, July 5, 2014, in a rare public address within a mosque in Mosul, Iraq, al-Baghdadi declared the Islamic State a caliphate and

he anointed himself the caliph, or leader, of the organization. The objective of the terrorist organization is the forcible acquisition of land for the stated goal of creating an Islamic State without recognizing any national boundaries. ISIL seeks to accomplish its goals through the commission of various criminal acts and acts of terror against the United States and the world community. The criminal acts committed by members of the organization include murder, kidnapping, hostage taking, enslavement of women, sex trafficking, and more. On or about September 22, 2014, the chief spokesman for ISIL, Abu Mohammad Al Adnani, referenced America and other opponents of ISIL and stated that the organization intended to "enslave your women."

7. On or about August 3, 2013, United States citizen Kayla Jean Mueller and Individual #1 travelled into northern Syria. On their second full day within Syria, Ms. Mueller and Individual #1 were kidnapped at gunpoint by masked ISIL soldiers. The captors told Individual #1 that they were creating an Islamic State in Syria. ISIL notified Ms. Mueller's family of Ms. Mueller's death in an email communication on or about February 7, 2015. Ms. Mueller remained a hostage of ISIL from her capture in August 2013, until her death.

8. In August 2014, Individual #2 and Individual #3 were forcibly kidnapped by ISIL from their village in northern Iraq. Individual #2 and Individual #3 are young Kurdish women of Yazidi heritage.[1] Shortly after their capture, Individual #2 and Individual #3 were ultimately taken to a prison in Syria maintained by ISIL. Individual #2 and Individual #3 were held at this prison with Ms. Mueller.

9. On or about September 24, 2014, Ms. Mueller, Individual #2 and Individual #3 were transferred from the ISIL prison to the custody of the defendant and her husband,

---

[1] The Yazidi people are a minority religious sect of the Kurdish people who have been targeted by ISIL for persecution.

hereinafter referred to as Abu Sayyaf. Abu Sayyaf maintained a senior leadership position within ISIL, reporting directly to Abu Bakr al-Baghdadi. Abu Sayyaf served as ISIL's minister for oil and gas and, prior to that role, was responsible for ISIL's media program.

10. The defendant and Abu Sayyaf jointly maintained multiple residences (the Sayyaf residences) where they forcibly held Ms. Mueller, Individual #2, Individual #3, and other female captives. The captives were at various times handcuffed, held in locked rooms, and given orders on a daily basis with respect to their activities, movements, and liberty. The distinctive ISIL black and white flag bearing ISIL's symbol was prominently displayed in the residences maintained by the defendant and Abu Sayyaf. The ISIL symbol was also displayed in the residences on other items such as notebooks. The defendant chastised the captives by calling them "kafir" or "infidels." During their captivity, the defendant and other co-conspirators showed violent ISIL propaganda videos to Ms. Mueller, Individual #2, and Individual #3. During their captivity, other young women held by the defendant and Abu Sayyaf were sold or traded to ISIL men. Ms. Mueller and the other young women had no freedom and were compelled to serve at the behest of the ISIL men. The young women were characterized as being "owned" by the ISIL men who acquired them. While in captivity, Kayla Jean Mueller was sexually abused by Baghdadi, who forced her to have sex with him. The defendant knew how Ms. Mueller was treated by Baghdadi when Ms. Mueller was held against her will in the defendant's home.

11. The defendant and Abu Sayyaf maintained numerous firearms in their residences. These firearms were open and visible to the captives. The firearms were maintained in the open so that ISIL members could have easy access to them. For a period of time, a large supply of weapons were maintained in a room of one of the Sayyaf residences for use by ISIL fighters.

12. While Ms. Mueller, Individual #2, and Individual #3 were held in captivity by the defendant and Abu Sayyaf, the defendant threatened Ms. Mueller, Individual #2, and Individual #3, telling them that she would kill them if they did not listen to her.

13. On or about May 15, 2015, the United States Department of Defense (DOD) captured the defendant at her home as a result of military operation. The United States military rescued a young Yazidi woman held captive by the defendant and Abu Sayyaf. According to DOD, Abu Sayyaf was killed during the course of the operation when he engaged U.S. forces. Several firearms stored at the residence at the time of the U.S. military operation were seized after the defendant's capture and are currently maintained in FBI custody.

14. Beginning on or about June 17, 2015, the defendant was interviewed by your affiant and other FBI special agents. During the interview, the defendant was read her *Miranda* rights, acknowledged understanding her rights in writing, and voluntarily agreed to waive those rights, again in writing.

15. The defendant admitted that her family members belonged to the al-Q'aida in Iraq (AQI) terrorist organization. AQI is the predecessor group to ISIL. The defendant stated she chose to marry Abu Sayyaf in 2010 while he was a member of AQI. The defendant admitted she admired the courage and strength of AQI. She also admitted that Abu Sayyaf remained a member of the terrorist organization when its name changed to ISIL.

16. The defendant admitted that she, along with her husband, was responsible for maintaining custody of Ms. Mueller, Individual #2, Individual #3, and others on behalf of ISIL. The defendant admitted she had sole responsibility for maintaining Ms. Mueller, Individual #2, Individual #3, and others in captivity while her husband traveled to address ISIL business.

17. The defendant admitted that ISIL members, including Abu Bakr al-Baghdadi, would stay at her residence on an as-needed basis.

18. The defendant admitted that Abu Bakr al-Baghdadi "owned" Ms. Mueller during the period of time that Ms. Mueller was in captivity at the Sayyaf residence. The defendant admitted that "owning" is equivalent to slavery.

19. The defendant admitted that, prior to the time when Ms. Mueller and the other young women were held captive in her home, the defendant sometimes accompanied Abu Sayyaf when he traveled to Mosul, Iraq, and Raqqa, Syria for ISIL. The defendant admitted to meeting an individual named Abu Hassan, who produced propaganda videos for ISIL. The defendant admitted that she recognizes the voice of Abu Hassan as the narrator on multiple ISIL propaganda videos she has viewed.

20. The defendant admitted that her residence was used to store large sums of U.S. currency that ISIL acquired through its oil and gas business and other illegal activities.

21. The defendant admitted secreting up to 25 AQI members at her residence during AQI's transition to ISIL.

22. The defendant admitted that her home was used at one time to store a large supply of firearms for use by ISIL fighters.

23. The defendant admitted that Abu Sayyaf told her that ISIL committed beheadings to instill terror against America.

24. The defendant admitted that when she first saw Kayla Jean Mueller she thought Ms. Mueller was being held for ransom. She then admitted that she thought Ms. Mueller was being held for ransom or for the exchange of prisoners.

25.    Based on the foregoing, there is probable cause to believe that from in or about August 3, 2013, and continuing thereafter up to and including May 16, 2015, the defendant NISREEN ASSAD IBRAHIM BAHAR, a/k/a "Umm Sayyaf," and others known and unknown to your affiant, did knowingly and intentionally combine, conspire, confederate, and agree to knowingly and unlawfully provide material support and resources to a foreign terrorist organization, namely Islamic State of Iraq and the Levant, knowing that the organization was a designated terrorist organization, and knowing that the organization had engaged in and was engaging in terrorist activity as that term is defined in Title 8, United States Code, Section 1182(a)(3)(B), and knowing that the organization had engaged in and was engaging in terrorism as that term is defined in Title 22, United States Code, Section 2656f(d)(2). The death of Kayla Jean Mueller, a citizen of the United States, resulted from the commission of this offense.

William H. Heaney, Special Agent
Federal Bureau of Investigation

Subscribed and sworn to before
me on February 8, 2016
at Alexandria, Virginia.  /s/
    Michael S. Nachmanoff
    United States Magistrate Judge
The Honorable Michael S. Nachmanoff
UNITED STATES MAGISTRATE JUDGE