IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| | ) | |
| v. | ) | |
| | ) | Case No. 1:16-mj-63-MSN |
| | ) | |
| NISREEN ASSAD IBRAHIM BAHAR, | ) | |
| a/k/a "Umm Sayyaf," | ) | |
| Defendant. | ) | |

## MEMORANDUM OF LAW IN SUPPORT OF
## CERTAIN MOVANTS' UNOPPOSED MOTION TO PROCEED UNDER PSEUDONYM

## TABLE OF CONTENTS

**Page**

I. INTRODUCTION AND BACKGROUND ........................................................................... 1

II. LEGAL STANDARD ........................................................................................................ 2

III. ARGUMENT ..................................................................................................................... 3

   A. The *Jacobson* Factors Overwhelmingly Weigh in Favor of Permitting the
     Movants to Proceed Under Pseudonym ....................................................................... 3

      1. The Movants' Enslavement by the Defendant, and the Crimes the
        Defendant Committed Against Them, is of a Highly Personal and
        Sensitive Nature ................................................................................................... 4

      2. Disclosing the Movants' Identities Creates a Risk of Serious Physical
        Harm ..................................................................................................................... 5

      3. The Four Movants Were Minors at the Time of the Crimes ................................. 7

      4. The Government is the Opposing Party in this Action .......................................... 8

      5. Allowing the Movants to Proceed Anonymously Risks No Unfairness to
        the Government or the Defendant ....................................................................... 10

IV. CONCLUSION ................................................................................................................ 11

i

## TABLE OF AUTHORITIES

**CASES**

*A.D. v. Wyndham Hotels & Resorts, Inc.*,
  2020 WL 5269758 (E.D. Va. Mar. 20, 2020) ........................................................4, 5

*Candidate No. 452207 v. CFA Inst.*,
  42 F. Supp. 3d 804 (E.D. Va. 2012) ......................................................................2, 4

*Doe No. 2 v. Kolko*,
  242 F.R.D. 193 (E.D.N.Y. 2006) ...............................................................................7

*Doe v. Alger*,
  317 F.R.D. 37 (W.D. Va. 2016) .....................................................................8, 8, 10

*Doe v. Cabrera*,
  307 F.R.D. 1 (D.D.C. 2014).........................................................................................5

*Doe v. Fowler*,
  2018 WL 3428150 (W.D.N.C. July 16, 2018).............................................................7

*Doe v. Frank*,
  951 F.2d 320 (11th Cir. 1992). ..................................................................................10

*Doe v. Penzato*,
  2011 WL 1833007 (N.D. Cal. May 13, 2011) .............................................................4

*Doe v. Pittsylvania Cty., Va.*,
  844 F. Supp. 2d 724 (W.D. Va. 2012) .........................................................................9

*Doe v. Pub. Citizen*,
  749 F.3d 246 (4th Cir. 2014) ...................................................................................2, 9

*Doe v. The Rector & Visitors of George Mason Univ.*,
  179 F. Supp. 3d 583 (E.D. Va. 2016) ...................................................................4, 7, 9

*Doe v. United States Dep't of State*,
  2015 WL 9647660 (D.D.C. Nov. 3, 2015) ...............................................................6, 9

*E.E.O.C. v. Spoa, LLC*,
  2013 WL 5634337 (D. Md. Oct. 15, 2013) ..................................................................4

*Int'l Refugee Assistance Project v. Trump*,
  2017 WL 818255 (D. Md. Mar. 1, 2017).................................................................8, 9

*James v. Jacobson*,
  6 F.3d 233 (4th Cir. 1993) ................................................................................ *passim*

*Roe v. Doe,*
    319 F. Supp. 3d 422 (D.D.C. 2018) ..................................................................8, 10

*United States v. Bell,*
    2020 WL 7041182 (E.D. Mich. Dec. 1, 2020) ..................................................3, 11

*United States v. Gakhal,*
    2015 WL 5559852 (N.D. Ill. Sept. 17, 2015) ..................................................3, 11

*United States v. Kaufman,*
    2005 WL 2648070 (D. Kan. Oct. 17, 2005) .........................................................9

*United States v. Torres,*
    2020 WL 4500046 (D.N.J. Aug. 5, 2020) ......................................................3, 11

*United States v. Tsethlikai,*
    2018 WL 3801248 (D.N.M. Aug. 9, 2018) ....................................................3, 11

*United States v. Turner,*
    367 F. Supp. 2d 319 (E.D.N.Y. 2005) ..........................................................3, 11

**STATUTES**

18 U.S.C. § 3771 ......................................................................................................1

18 U.S.C. § 3771(a)(8) .........................................................................................9, 10

18 U.S.C. § 3771(b)(1) ..........................................................................................11

**OTHER AUTHORITIES**

Lead Inspector General, *Quarterly Report to the United States Congress for Operation Inherent Resolve* (Feb. 5, 2021) ...............................................................................7

UN Human Rights Council, *"They Came to Destroy": ISIS Crimes Against the Yazidis*, U.N. DOC. A/HRC/32/CRP.2, June 15, 2016..................................................................5

**RULES**

Fed. R. Civ. P. 10(a) ..............................................................................................2

## I. INTRODUCTION AND BACKGROUND

Mary Roe, Mary Roe II, Mary Roe III, and Mary Roe VI (collectively, the "Movants")[1] are Iraqi nationals of the Yazidi faith and survivors of the systemic human rights abuses perpetrated by the Islamic State of Iraq and the Levant ("ISIL"). As described in their Motion to Enforce Movants' Rights Under the Crime Victims' Rights Act (the "CVRA Motion"), filed concurrently herewith, the Movants have collectively endured brutal physical, mental, and/or sexual violence while enslaved by the Defendant Nisreen Assad Ibrahim Bahar ("Umm Sayyaf" or "Defendant") and her husband, Abu Sayyaf al-Iraqi, a senior ISIL leader, as part of the ISIL practice of enslaving women and children. In early 2016, the U.S. Government charged the Defendant for knowingly conspiring to provide material support to ISIL. Dkt. 1. The Movants, who were all minors at the time these events transpired, are victims of the Defendant's crimes and are entitled to the rights and protections afforded by the Crime Victims' Rights Act ("CVRA"), 18 U.S.C. § 3771.

The Movants request to file their CVRA Motion under pseudonyms and to proceed anonymously in these proceedings.[2] As victims seeking justice for the horrific atrocities committed against them and other Yazidi women and girls by the Defendant and ISIL, the Movants and their families are likely to face serious threats of physical harm or even death should their participation in this case be made public. Although ISIL does not presently occupy large areas of

---

[1] One Movant to the CVRA Motion, Nasima Avdo Saleh, has chosen to pursue her CVRA rights publicly and is not a party to this Pseudonym Motion. Ms. Saleh, who was 38 years old at the time of the Defendant's crimes against her, is seeking to enforce her CVRA rights on behalf of herself as well as her daughter, Inas Alias Hussein, who is also a victim of the Defendant's crimes. Inas remains missing, and Ms. Saleh and her family continue to search for her. As of late 2020, Ms. Saleh and her family received information that Inas was alive and continuing to be held captive by ISIL militants.

[2] If the Court determines it is relevant and necessary for the determination of the Movants' Motions, the Movants would consider disclosing their identities only to this Court and to relevant representatives of the U.S. Government.

1

physical territory, the group continues to carry out deadly attacks in Northern Iraq and threaten the Yazidis—a community ISIL has vowed to destroy.  In light of these extraordinary circumstances, this Court should grant the Movants' unopposed motion to proceed under pseudonyms (the "Pseudonym Motion").

## II. LEGAL STANDARD

"The Federal Rules of Civil Procedure require that the identities of the parties to a case be disclosed." *Doe v. Pub. Citizen*, 749 F.3d 246, 273 (4th Cir. 2014); *see also* Fed. R. Civ. P. 10(a). While this is considered a "vital component of the courts' facilitation of public access and public scrutiny of judicial proceedings," *Candidate No. 452207 v. CFA Inst.*, 42 F. Supp. 3d 804, 807 (E.D. Va. 2012), courts in the Fourth Circuit have discretion to dispense with the disclosure requirement where "compelling concerns relating to personal privacy or confidentiality" are present. *Pub. Citizen*, 749 F.3d at 273.  In determining whether a party may proceed under a pseudonym, courts have "an independent obligation to ensure that extraordinary circumstances support such a request by balancing the party's stated interest in anonymity against the public's interest in openness and any prejudice that anonymity would pose to the opposing party." *Id.* at 274.

The Fourth Circuit has identified several non-exhaustive factors to guide a court's exercise of its discretion when ruling on an anonymity request. *See James v. Jacobson*, 6 F.3d 233, 238 (4th Cir. 1993). These non-exclusive factors include: (1) whether the justification asserted by the requesting party is merely to avoid the annoyance and criticism that may attend any litigation, or is to preserve privacy in a matter of sensitive and highly personal nature; (2) whether identification poses a risk of retaliatory physical or mental harm to the requesting party or even more critically, to innocent non-parties; (3) the ages of the persons whose privacy interests are sought to be

2

protected; (4) whether the action is against a governmental or private party; and (5) the risk of unfairness to the opposing party from allowing an action against it to proceed anonymously. *Id.*

Applying these factors, courts in other circuits have regularly allowed victims pursuing their CVRA rights to proceed anonymously, especially in circumstances where they were the victims of sex crimes, as the Movants were through the actions of the Defendant. *See, e.g.*, *United States v. Torres*, 2020 WL 4500046, at *5 (D.N.J. Aug. 5, 2020); *United States v. Tsethlikai*, 2018 WL 3801248, at *2 (D.N.M. Aug. 9, 2018); *United States v. Gakhal*, 2015 WL 5559852 (N.D. Ill. Sept. 17, 2015); *United States v. Turner*, 367 F. Supp. 2d 319, 338 (E.D.N.Y. 2005); *United States v. Bell*, 2020 WL 7041182, at *3 (E.D. Mich. Dec. 1, 2020).

## III. ARGUMENT

### A.   The *Jacobson* Factors Overwhelmingly Weigh in Favor of Permitting the Movants to Proceed Under Pseudonym

The *Jacobson* factors establish that allowing the Movants to proceed anonymously is appropriate in this case: (1) the Movants' enslavement by the Defendant and the sexual, physical, and psychological crimes she committed against them is highly sensitive and personal in nature; (2) the Movants have a well-founded fear that their identification poses a risk of retaliatory physical or mental harm to themselves and their families; (3) the Movants were all minors at the time the Defendant committed her crimes against them, including facilitating acts of sexual violence; (4) the Government is the opposing party to this proceeding; and (5) there is no risk of unfairness to either the Government nor the Defendant by allowing the Movants to proceed anonymously.

1. **The Movants' Enslavement by the Defendant, and the Crimes the Defendant Committed Against Them, is of a Highly Personal and Sensitive Nature**

The nature and specific details of the Movants' captivity by the Defendant and her husband, and the crimes they committed against them, are "matter[s] of a sensitive and highly personal nature" and weigh in favor of allowing them to proceed using a pseudonym. In filing their CVRA Motion, the Movants must recount their traumatic experiences as the Defendant and her husband's slaves where they were regularly trafficked to other ISIL members and endured unimaginable physical, sexual, and psychological violence.

These abhorrent forms of violence are precisely the subject matters of the "utmost intimacy" where "the normal practice of disclosing the parties' identities yields to a policy of protecting privacy in a very private matter." *A.D. v. Wyndham Hotels & Resorts, Inc.*, 2020 WL 5269758, at *2 (E.D. Va. Mar. 20, 2020) (quoting *Candidate No. 452207 v. CFA Inst.*, 42 F. Supp. 3d 804, 807 (E.D. Va. 2012)); *see also Doe v. The Rector & Visitors of George Mason Univ.*, 179 F. Supp. 3d 583 (E.D. Va. 2016) (finding that allegations of sexual assault against the plaintiff were of a nature "sufficiently severe to rise to the level of an 'extraordinary circumstance' in support of a pseudonym"); *Doe v. Penzato*, 2011 WL 1833007, at *3 (N.D. Cal. May 13, 2011) (granting a motion to proceed under pseudonym where the "litigation involves matters of 'a highly sensitive and personal nature' to [plaintiff], 'including the emotional and psychological impact of being a victim of human trafficking and sexual battery" and "publication of her name would open her to inquiries from the press and other interested individuals, and that her ability to recover from her trauma would thus be compromised."); *E.E.O.C. v. Spoa, LLC*, 2013 WL 5634337, at *3 (D. Md. Oct. 15, 2013) (finding matters involving sexual assault are of a "highly sensitive and personal nature").

Protecting the identities of the Movants is critical to ensuring that other survivors of sexual violence and human trafficking feel safe to come forward with their claims. *See Doe v. Cabrera*, 307 F.R.D. 1, 6 (D.D.C. 2014) (internal quotations omitted) (recognizing a "strong [public] interest in protecting the identities of sexual assault victims so that other victims will not be deterred from reporting such crimes."). Given the nature of the events detailed in the CVRA Motion, the first *Jacobson* factor weighs firmly in favor of granting the Movants' Pseudonym Motion.

### 2. Disclosing the Movants' Identities Creates a Risk of Serious Physical Harm

In accordance with the second *Jacobson* factor, the Movants have a well-founded fear that if their identities are disclosed, they or their families will face near-certain threats of physical violence and even death by ISIL members, including the Defendant and her family members or affiliates. This fear could not be more justified or credible. ISIL's genocidal campaign to destroy the Yazidi population through mass murder and enslavement of women and children has been meticulously documented by the international community and recognized as amounting to "genocide" by the U.S. Government.[3] The Movants are among thousands of Yazidi women and girls who were subjected to ISIL's practices of sexual violence and enslavement.

Courts within this circuit and others have permitted plaintiffs to proceed via pseudonym in instances where "identification poses a risk of retaliatory physical or mental harm to the requesting party or . . . to innocent non-parties." *Jacobson*, 6 F.3d 233 at 238; *see also Wyndham Hotels & Resorts, Inc.*, 2020 WL 5269758, at *2 (finding sex trafficking victim faced retaliatory threats of

---

[3] *See, e.g.*, UN Human Rights Council, *"They Came to Destroy": ISIS Crimes Against the Yazidis*, U.N. DOC. A/HRC/32/CRP.2, June 15, 2016; U.S. Department of State, Secretary of State John Kerry, *Remarks on Daesh and Genocide*, Mar. 17, 2016, at 1, *available at* https://2009-2017.state.gov/secretary/remarks/2016/03/254782.htm. *See also concurrently-filed Memorandum of Law in Support of Motion to Enforce the Movants' Rights Under the Crime Victims' Rights Act, Section I.*

physical harm by her trafficker and may also suffer mental and emotional harm due to the stigma associated with sex work). In *Doe v. United States Department of State*, the district court permitted an Iraqi plaintiff engaged in U.S.-led reconstruction efforts in Iraq to file his complaint under a pseudonym. 2015 WL 9647660, at *1 (D.D.C. Nov. 3, 2015). The court reasoned that preserving anonymity meant "protecting Doe and innocent family members from retaliation and a legitimate fear of violence and death at the hands of those who have targeted Iraqis who have provided assistance to the U.S. [g]overnment." *Id.* at *3 (internal quotations omitted).

Here, too, the Movants face extraordinary personal risk to themselves and their families which necessitates proceeding under a pseudonym. In particular, the Movants here request formal recognition as crime victims in a U.S. criminal case against an ISIL member, and public disclosure of their participation would compromise the safety of the Movants and their families. Moreover, as explained in the CVRA Motion, the Movants do not have clarity regarding the length or the Defendant's sentence nor the stability of the KRG's custody of her given the dynamic nature of the region's political and security situation. Even assuming the Defendant is not an immediate threat, the Movants are especially vulnerable to reprisals by ISIL members, including any family members or affiliates of the Defendant, by publicly participating in this case.[4] ISIL continues to commit regular terrorist attacks in Northern Iraq, where some of the Movants reside, continues to coordinate trafficking and enslavement of Yazidi women worldwide, and maintains a vast network

---

[4] *See, e.g.*, Jane Arraf and Falih Hassan, *U.S. Airstrike Kills Top ISIS Leader in Iraq*, N.Y. TIMES, Jan. 29, 2021, *available at* https://www.nytimes.com/2021/01/29/world/middleeast/us-airstrike-kills-top-isis-leader-in-iraq.html ("The Islamic State no longer holds territory in Iraq but has continued to carry out deadly attacks."); Alissa J. Rubin, Lara Jakes, and Eric Schmitt, *ISIS Attacks Surge in Iraq Amid Debate on U.S. Troop Levels*, N.Y. TIMES, June 10, 2020, *available at* https://www.nytimes.com/2020/06/10/world/middleeast/iraq-isis-strategic-dialogue-troops.html ("This is the Islamic State in Iraq in 2020: low-tech, low-cost, rural, but still lethal.").

of associates globally.[5] Keeping the Movants' identities protected is a matter of life or death, and the second *Jacobson* factor strongly weighs in favor of anonymity here.

### 3.    The Four Movants Were Minors at the Time of the Crimes

The third *Jacobson* factor considers "the ages of the persons whose privacy interests are sought to be protected." *Jacobson*, 6 F.3d 233 at 238. Recently, a court in this district considered not only the current ages of the parties to the litigation but also their ages during the events at issue in determining how to weigh this factor. *See The Rector & Visitors of George Mason Univ.*, 179 F. Supp. 3d at 594. The public interest in preserving parties' privacy and allowing them to proceed anonymously is even more pronounced in cases involving allegations of child sexual abuse. *See Doe v. Fowler*, 2018 WL 3428150, at *2 (W.D.N.C. July 16, 2018) (allowing adult victim of child sexual exploitation to proceed by pseudonym and noting the "severe psychological harm" unique to such circumstances); *Doe No. 2 v. Kolko*, 242 F.R.D. 193 (E.D.N.Y. 2006) (finding adult plaintiff who alleged sexual abuse by Rabbi as a minor was entitled to proceed by pseudonym).

Here, the Movants seeking to proceed by pseudonym are all under the age of 25, and their ages ranged from 13 to 17 years old during the underlying events detailed in their CVRA Motion, including the acts of sexual violence. Therefore, the third *Jacobson* factors also weighs in favor of anonymity.

---

[5] *See generally* Lead Inspector General, *Quarterly Report to the United States Congress for Operation Inherent Resolve*, Feb. 5, 2021, *available at* https://media.defense.gov/2021/Feb/09/2002578750/-1/-1/1/LEAD%20INSPECTOR%20GENERAL%20FOR%20OPERATION%20INHERENT%20RESOLVE.PDF.

**4.      The Government is the Opposing Party in this Action**

The fourth *Jacobson* factor "looks at the identity of the defendant in the case and asks
whether the plaintiff is pursuing legal action against the government or a private party." *Doe v.
Alger*, 317 F.R.D. 37, 41 (W.D. Va. 2016); *Jacobson*, 6 F.3d 233 at 238.  While the Fourth Circuit
has not considered the *Jacobson* factors in the unique posture of crime victims asserting CVRA
recognition within a criminal case,[6] the Movants submit that the Government is the opposing party
relative to the relief sought by the Movants in their CVRA Motion.  The Government has indicated
that it will not oppose the Movants' Pseudonym Motion.  However, regardless of whether the
Government, the Defendant, or both are to be considered opposing parties here, the factor counsels
permitting the use of pseudonyms.

When "a plaintiff challenges the government or government activity, courts are more likely
to permit plaintiffs to proceed under a pseudonym." *Doe v. Alger*, 317 F.R.D. 37, 41 (W.D. Va.
2016).  Courts take this approach because while "the mere filing of a lawsuit against a private party
may cause the defendant reputational and economic harm . . . the government is not vulnerable to
similar reputational harm, particularly in a case involving a challenge to the constitutional,
statutory, or regulatory validity of government activity." *Int'l Refugee Assistance Project v.
Trump*, 2017 WL 818255, at *3 (D. Md. Mar. 1, 2017).  This reasoning is particularly salient here,
where the Department of Justice is in possession of the information sought by the Movants in the
CVRA Motion.  The Movants' challenge to the "government [in]activity" does not leave the

---

[6] When analyzing this fourth factor, "the case law does not line up cleanly" in unusual contexts.
*Roe v. Doe*, 319 F. Supp. 3d 422, 429 (D.D.C. 2018) (denying a defendant's request for
anonymity in a civil action concerning sexual assault). "The fourth factor is somewhat difficult
to apply . . . as precedent cases often frame it in terms of plaintiff-movants." *Id.*

8

Department of Justice vulnerable to "reputational and economic harm," and the Movants' request for anonymity should be permitted. *Int'l Refugee Assistance Project*, 2017 WL 818255, at *3.

While courts have recognized the "heightened" public interest involved in litigation involving the federal government, *see Public Citizen*, 749 F.3d at 274, here any heightened public interest in this case does not weigh against allowing the Movants anonymity. First, the public interest in this case lies in ensuring that the Government safeguards the rights of the victims. Second, protecting the identity of the Movants will not deprive the public of its full access to any of the litigation materials or any of the governments' filings in the underlying criminal prosecution. *See The Rector & Visitors of George Mason Univ.*, 179 F. Supp. 3d 583 at 594. In proceedings similarly involving sexual abuse and involuntary servitude, another federal court determined that the CVRA even "require[d]" limiting "sketch artists' activities in the courtroom[.]" *United States v. Kaufman*, 2005 WL 2648070, at *4 (D. Kan. Oct. 17, 2005) (citing 18 U.S.C. § 3771(a)(8)). Finally, "in a case against the government, the balance could be tipped by how sensitive the plaintiff's personal information is." *United States Dep't of State*, 2015 WL 9647660, at *3. As established above, the Movants must disclose highly personal and sensitive facts in the CVRA Motion, which therefore tips in favor of allowing them to proceed anonymously.

The same reasoning holds even if the Defendant is considered a party in opposition to this Pseudonym Motion or the CVRA Motion. While this factor's analysis in civil suits requires as "a matter of '[b]asic fairness' that a private-party defendant's accusers participate in the suit under their real names," *Doe v. Pittsylvania Cty., Va.*, 844 F. Supp. 2d 724, 730 (W.D. Va. 2012), the same logic does not follow when the harm against the victim requesting anonymity rises to the level of criminality. Here, neither the Movants' request for anonymity nor, for that matter, the Movants' request to be identified as crime victims under the CVRA invades the Defendant's rights.

In particular, in this case, the Government has already put the Defendant's "good name[] and reputation" at issue. *Roe v. Doe*, 319 F. Supp. 3d 422, 429 (D.D.C. 2018), quoting *Doe v. Frank*, 951 F.2d 320, 323-24 (11th Cir. 1992).

For the reasons above, the fourth *Jacobson* factor therefore weighs in favor of granting the Movants' Pseudonym Motion (or, at worst, does not weigh against anonymity).

### 5. Allowing the Movants to Proceed Anonymously Risks No Unfairness to the Government or the Defendant

Finally, "[t]he fifth [*Jacobson*] factor examines the risk of unfairness to the defendant from allowing the plaintiff to proceed anonymously." *Doe v. Alger*, 317 F.R.D. 37, 41 (W.D. Va. 2016). Here, neither the Government nor the Defendant will be prejudiced by this Court allowing the Movants to proceed anonymously. *See Jacobson*, 6 F.3d 233 at 238.

As noted above, the Government often faces only a minimal risk of unfairness as "reputational harm is not at issue in a case against the federal government." *International Refugee Assistance Project*, 2017 WL 818255, at *3. Here, the Department of Justice does not need to know the identities of the Movants in order to respond to the CVRA Motion, and the Movants have submitted repeated requests for information to the Government through their legal counsel and may continue to engage with the Government in this manner at this preliminary stage. Moreover, the Government itself has indicated that it will not oppose Movants' Pseudonym Motion.

Precedent weighs in favor of permitting crime victims to proceed anonymously when seeking to enforce their rights under the CVRA, even when balanced against considerations of fairness to the criminal defendants. Importantly, the CVRA affords crime victims "[t]he right to be treated with fairness and with respect for the victim's *dignity and privacy*." 18 U.S.C. § 3771(a)(8) (emphasis added). Indeed, "[i]n any court proceeding involving an offense against a

10

crime victim, the court shall ensure that the crime victim is afforded the rights described in subsection (a)." 18 U.S.C. § 3771(b)(1). Accordingly, courts have found that granting anonymity to CVRA crime victims—especially when the movants were the victims of sex crimes—does not cause undue prejudice against defendants. *See, e.g., United States v. Torres*, 2020 WL 4500046, at *5 (D.N.J. Aug. 5, 2020) (granting a protective order protecting crime victims' identities under CVRA analysis, after balancing the accused's constitutional rights); *United States v. Tsethlikai*, 2018 WL 3801248, at *2 (D.N.M. Aug. 9, 2018) (entering a protective order to limit defendant's access to discovery materials which identified the victim, citing the CVRA); *United States v. Gakhal*, 2015 WL 5559852 (N.D. Ill. Sept. 17, 2015) (granting a protective order in reliance upon Federal Rule of Criminal Procedure 16(d)(1) and the CVRA); *United States v. Turner*, 367 F. Supp. 2d 319, 338 (E.D.N.Y. 2005) (permitting motions for CVRA recognition to be filed under seal and even *ex parte* for good cause shown; acknowledging CVRA sponsors intent for a "liberal reading" of the statute, especially (a)(8), *id.* at 335); *Bell*, 2020 WL 7041182, at *3 (noting "pretrial disclosures of victims' identities would implicate victims' rights under the [CVRA] to reasonable protection from the accused and to be treated with respect and dignity.").

Allowing the Movants to proceed anonymously does not cause unfairness to the Government or the Defendant. For this reason, the fifth *Jacobson* factor weighs in favor of granting the Movants' request.

## IV. CONCLUSION

For the stated reasons above, the Movants respectfully request that the Court grant their Pseudonym Motion.

11

Dated: April 19, 2021                           By: _Katherine M. Davis_____

Katherine Maddox Davis (VSB 89104)
Cate Harding (*pro hac vice application forthcoming*)
Gibson, Dunn & Crutcher LLP
1050 Connecticut Avenue, N.W.
Washington, DC 20036
Phone: (202) 955-8587
Fax: (202) 831-6038
kdavis@gibsondunn.com
charding@gibsondunn.com

Zainab N. Ahmad
Charline O. Yim
Marryum A. Kahloon
    *Motions for* pro hac vice *admission filed herewith*
Gibson, Dunn & Crutcher LLP
200 Park Avenue
New York, NY 10166
Phone: (212) 351-2609
Fax: (212) 817-9500
zahmad@gibsondunn.com
cyim@gibsondunn.com
mkahloon@gibsondunn.com

Daniel McLaughlin
Elzbieta T. Matthews
Carmen K. Cheung
    *Motions for* pro hac vice *admission filed herewith*
Center for Justice & Accountability
One Hallidie Plaza, Suite 750
San Francisco, CA 94102
Phone: (415) 544-0444
Fax: (415) 544-0456
dmlaughlin@cja.org
ematthews@cja.org
ccheung@cja.org

Amal Clooney
    *Motion for* pro hac vice *admission filed herewith*
53-54 Doughty Street
London, WC1N 2LS
UNITED KINGDOM
Phone: +4402074741313
lal@doughtystreet.co.uk

*Counsel for Movants Mary Roe, Mary Roe II, Mary Roe III and Mary Roe VI*

12